All those previously announced, the times will be as allotted to counsel. The first case today is number 182028, Yara Chum v. Patricia Ann Coyne-Fague. Ms. McKenna. Good morning. May it please the Court, my name is Camille McKenna and I represent Yara Chum. I would like to request two minutes of rebuttal with the Court's permission. Yes. Thank you. The District Court and all the parties in this case agree that trial counsel in this case was ineffective. The prosecutor detailed Mr. Chum's confession in opening and then did not put that confession into evidence. And trial counsel never moved for a mistrial. The only issue before the State Court was whether or not trial counsel's errors prejudiced Mr. Chum. Strickland gives us In light, it may have been a discrepancy in terms of how the State Court spoke or misspoke perhaps. But in light of their finding that there was absolutely no prejudice whatsoever given the overwhelming evidence, I'm trying to figure out how we could possibly find that there was prejudice. So the State Court applied the incurable prejudice standard, which is different than Strickland prejudice. Incurable prejudice is a No, there's a dispute about whether they did or they didn't. They mentioned the Rhode Island rule, but they submerged it in a discussion of Strickland where they correctly articulate the Strickland standard and then they applied the Strickland standard. I'm not sure I see the basis for your argument that they applied the wrong rule given the rest of the discussion in their opinion. So there's a couple reasons why they applied the wrong standard. They identified the issue before the court, and this is quoting from their opinion, that being whether a prosecutor's reference to an admission and opening statement and subsequent failure to introduce that into evidence amounts to incurable prejudice. No, they cite a Rhode Island case that says that, but it's a sort of generalized Rhode Island approach to what happens when a prosecutor makes a statement. Do you deny that they, in the opinion itself, says that they are applying Strickland and discusses the Strickland standard? So they certainly mention Strickland. I'm not disputing that, but my position is they do not apply it. They apply the State Court incurable prejudice standard, and they never ask whether or not there's a reasonable probability that but for counsel's errors on this trial would have been granted. And that is the Strickland standard. That's the federal standard. That's clear. So when they analyze prejudice, they're not doing it under the Strickland prejudice. Counsel, what does incurable prejudice mean? So incurable prejudice is a State Court standard. I understand. What does it mean? Essentially, it is an instance where a trial court gives a cautionary instruction during a trial to cure some problem during that trial. And on appeal, there's a review of that decision, essentially determining whether or not that instruction was sufficient to cure that problem or whether or not that problem was so severe that it was incurable, that the verdict was affected. So it goes to a decision. Well, isn't that in effect what was done here? In this sense, the unprofessional conduct, if you will, was that in the face of the State announcing in the opening statement that they're going to put in this confession, they don't do it. So defense counsel could have asked for a mistrial, could have asked for some kind of curative instruction, or could have commented on that failure in the closing argument, didn't do any of those things. Correct. Now, with respect to not asking for a mistrial, the trial judge said even if you had asked for it, you wouldn't have gotten it. So that seems to go away. Right. But on the other issues, if he had asked for a curative instruction, if he had commented on the failure to put in the confession in his closing argument, I think the question is would that have made any difference? Isn't that really essentially the kind of analysis that you just say should have been done? So just with respect to the comments of the trial judge saying I wouldn't have granted a mistrial if he had asked for one, I think that that was done in hindsight to protect the conviction. It wasn't analyzing the prejudice under Strickland. And Strickland tells us that we can't – the idiosyncrasies of a particular judge should not be taken into consideration, that when you look at what the issue was here, this was a confession. This is the most damning evidence against a defendant in a criminal case. It came in in Oakland. I'd like to pursue Judge Lopez's question a little bit more. Let's put aside the trial judge's statement that I wouldn't have granted a new trial anyway. The fact of the matter is that the jury was instructed four times that these statements of counsel were not evidence and not to be considered as evidence. In addition, there was what you call it overwhelming, there was significant evidence that your client in fact committed this crime. Why isn't that sufficient for a state court to reasonably conclude that it makes no difference? Because looking at the curative instructions, those are considered during an incurable prejudice analysis, not under Strickland. Oh, now wait a minute. You're saying under Strickland we cannot take into account the fact that there were instructions not to consider counsel's statement as evidence? You are surely wrong if that's your proposition. I'm saying that that is not part of the Strickland prejudice analysis. Counsel, just to follow up Judge Lynch's question, this is something that really confuses me about your brief. You seem to say that the prejudice analysis is somehow based on some hypothetical future trial where the error that occurred would not take place. It seems to me what we're supposed to do is look at the trial that did take place and make a judgment whether if the error had not occurred would it have made any difference. Do you disagree with that proposition? We're not supposed to look at the trial that actually occurred? My argument is that under Strickland you have to look and see, had Mr. Trump had competent counsel and he had had that representation, is there a reasonable probability that the result would have been different? Because competent counsel would have moved to pass the case. I'm sorry? Competent counsel would have moved for a mistrial here. But the Supreme Court said no, and we have deference to their finding that there is, even though there may have been error, there was no prejudice. But if the Supreme Court applies law that is contrary to federal law, if I may just finish that. Go ahead. If the Supreme Court applies law that is contrary to federal law, that being Strickland, you don't need to give deference to that decision because it's an argument under the contrary to clause of 2254D1. Thank you. Go ahead. May it please the Court, Lauren Zuri on behalf of the respondent Patricia Coyne-Fegg. I think some of the confusion that's been created in this case over what standard the State Supreme Court applied is because this is one of those cases where in order to determine whether there's been deficient performance, you end up going through an analysis that's very similar to the one that you use to determine if there's prejudice. In this case, the State Supreme Court said that it was not going to declare Mr. Chung's counsel deficient because under the incurable prejudice standard, any motion that he might have made for a mistrial would not have been granted. That's the first prong. Then on the second prong is there prejudice because a motion that he might have made would not have been granted in view of the weight of the evidence and the four cautionary instructions that were given. There's no Strickland prejudice either. The use of the word prejudice in both the State court standard for incurable prejudice and under Strickland, I think has created confusion. Well, the way you're reading it is very different than the way your opponent reads it. You're suggesting that the incurable prejudice prong goes to the adequacy of performance. Yes. Okay. So why should we read it that way? It doesn't appear to read that way. Do you have some Rhode Island State case law that says this is an issue that goes to performance rather than prejudice? I mean, the use of the word incurable prejudice makes it sound like it goes to prejudice, not to performance. In the State's brief, there is a discussion of the State law for deciding motions for mistrial under the incurable prejudice standard, and State precedent is cited for that purpose. Okay. So are you telling us Rhode Island law is unless it would have resulted in a mistrial, there is no deficient performance? I think that generally speaking, an attorney isn't considered deficient for deciding not to make a motion that would not have been granted. There's no error there. Oh, my goodness. Then this case may be more serious, depending on the State's argument. Well, that was the holding of both the Superior Court and the Supreme Court stateside. And regardless of whether... You see, I had walked in here thinking that it was quite conceded that counsel was deficient for the three reasons Judge Lopez gave, and that that was not an issue we needed to think about. You're now telling us that that's the wrong way to think about this case. The State did not concede deficiency. What the State did was say you can presume deficiency because, in the end, prejudice is the decisive and just positive... And was that the State's position before the Rhode Island court? Yes, it was. Then how can you stand before us and make a different argument? Because the Rhode Island Supreme Court and the Superior Court both dealt with both prongs of Strickland, at least as I made the decision. But regardless, they clearly applied the prejudice prong of Strickland. Whether or not you agree with their analysis of the deficiency prong, they clearly understood the prejudice prong and they applied the proper standard. Because any motion for mistrial would not have been granted, there is no reasonable probability that the outcome for trial would have been different. This case turns ultimately, both prongs, on the factual findings of the State Supreme Court and the Superior Court. Under those findings, there were three credible and accurate and reliable eyewitnesses who all identified the defendant. There were corroborating circumstances in the course of the arrest. And there was never any evidence introduced in any post-conviction relief action that can be used now to challenge those findings under 2254E1. Are you disavowing reliance on the instructions given to the jury not to consider the statements of counsel? No, that's the other part of the analysis. All right, so suppose this case only involved statements, instructions given to the jury, but did not involve three eyewitnesses. In every kind of case where you have a motion for mistrial, where you're analyzing the effect of an inflammatory statement made by a party or a witness, the analysis involves a combination of the weight of the evidence and the nature of the instructions. It's a very ad hoc analysis. In cases like Uber v. Guarino, where the evidence was on a knife's edge, the cautionary instructions were insufficient to counteract the prejudice. In Rhode Island, we had case law State v. Ordway from 1992, which Judge Thompson may be familiar with, where there was an inflammatory comment made by the prosecutor, and the evidence was considered so inequipoise that that could not be satisfied by cautionary instructions. Here, you have what the courts characterize as overwhelming evidence. You had four cautionary instructions which were deemed perfectly more than adequate on the direct appeal. And so this is not a case where a mistrial would have been granted. Are you saying that the prosecutor's statement that I'm going to prove my case in part through his confession was an inflammatory statement? No, I'm not saying it's inflammatory. You seem to have conceded that. The law of motions for mistrial, as far as the incurable prejudice, all focuses on the nature of the statement, whether it's inflammatory or otherwise inappropriate, or whether there is some danger that the jury will be prejudiced in a way that makes the trial unfair. Here, the prosecutor made a statement. There's never been an allegation of bad faith. I'm sorry. The Strickland standard is a but for the inadequate performance of counsel. There's a reasonable possibility that the outcome will be different. It is not, did he get a fair trial. I understand that, Your Honor. So can I go back to your assertion and see if you're seriously making it that if a mistrial motion would not have been granted, there is no deficient performance. That's where you started. That's where I started. That is how I read the Supreme Court opinion. However, that is certainly something you can jump right over and go to the prejudice prong of Strickland. The state has always had the position in state court and in this court and below that the Strickland prong is dispositive of this case. Strickland itself says that it's often much easier to determine prejudice than to determine deficient performance. And in this case, that is certainly the case. In this court's decision in Goggins, you ultimately decided not to determine whether or not the attorney for the defendant was deficient because the question proved too knotty and too difficult on the record. Here, because there's no Strickland prejudice, assuming arguendo there's sufficient performance, the defendant's petition was correctly denied. And at the center of the argument is the findings of fact. The defendant can argue all he wants about the nature of Strickland prejudice, but he has not and cannot present this court with evidence to rebut the presumption of correctness of the state Supreme Court's findings. And absent that kind of additional evidence, there's nothing on which you can apply the Strickland prejudice standard to come out with a different result. I want to go back to Judge Thompson's question. Let's put aside the trial judge's denial of a motion for new trial. Say that's irrelevant. It's something to be evaluated independently. But Judge Thompson directed you to the Supreme Court's conclusions that the prejudice standard had not been met because of three or four different items. You say we must give deference to that whether or not we give any deference to the trial court's denial of the motion for a new trial. I think that this court should give deference to a state court's interpretation and application of state law. No, no. Would you answer the question? I'm trying a distinction between what the law court, the high court of Rhode Island did and what the trial judge did on a motion for a new trial. As I understand the law, we don't particularly give deference to that trial judge's determination. But we do give deference, as Judge Thompson said, to the highest court's determination of the facts which lead it to the conclusion about prejudice. Yes. And I'm afraid I'm missing the beginning of Judge Thompson's question. I apologize. We do give the Supreme Court adopted and ratified the findings of the trial court in terms of the evidence. And based on those findings, it found there was no reasonable probability that the outcome of the case would have been different. It did not misapply the Strickland standard. And the way you know this is because it isn't until Mr. Chum got to this court that he ever argued that incurable prejudice was the standard that was used. He never informed the Supreme Court or the state Supreme Court that there was an error either in the consideration by the superior court or in their own decision. He didn't argue that to Judge McConnell below. He didn't raise it until he got here. And certainly if it was so apparent that the Supreme Court of Rhode Island used the wrong standard in Strickland, it would have been raised before now. Counsel, just very quickly, the Rhode Island Supreme Court explicitly factored into its no prejudice determination the fact that the trial judge said he would not have granted the motion for a mistrial. The opposing counsel says that was a mistake, that's irrelevant, and it's an objective analysis. Was the Rhode Island Supreme Court wrong in factoring that specific decision into its prejudice analysis? I think that remark was icing on the cake because I don't think... Was it right or wrong? I don't think there was anything wrong about it. But I think the trial judge also, when denying the motion for a new trial, was making credibility determinations even though that was backward looking. I don't think it was wrong. I don't think it's decisive. I don't think that it negates the correctness of the rest of their findings or undercuts the weight of the evidence and the correctness of their factual findings. Just to pursue Judge Lopez's point, there may be a difference between how a federal court looks at the high court decision and what it's permissible for the high court to do in reviewing its own trial judges. It's an interesting question. You're over your time. Yes, ma'am. Thank you. I think with respect to the problem one issue, I think it's laid out in my papers where I feel that the state has essentially not contested that throughout the litigation in this case. When you look at what the Rhode Island Supreme Court did... I'm sorry. Can you deal with her waiver? Yes. First of all, this case has always been brought under 2254 D1, which is the contrary to an unreasonable application clause. Mr. Trump's claim has always been the same, that his attorney was ineffective for failing to move for a missed trial. The district judge did find that the decision of the state court was not contrary to or an unreasonable application. Did you argue the incurable prejudice issue that you're raising here before Judge McConnell? I always contested the state court's analysis of prong two of Strickland. I attacked the consideration of the cautionary instructions and... No, no, no. Answer the question. My position is I did attack that analysis. Counsel, the record suggests to the contrary. I mean, I don't see any indication in the record below that this very specific argument that you're making now, that the incurable prejudice standard is contrary to the law of the Supreme Court, that you ever made the argument in those precise terms. Yes, of course you addressed the prejudice prong in Strickland. You had to do that. But the specific legal argument that you're making now, you seem to be making for the very first time before us. So I think, yes, I certainly argued against the analysis of prong two. I attacked the cautionary instructions, attacked the reliance on what the trial judge said. I think certainly appellate litigation crystallizes the issues. Did I develop it more here? Absolutely. This is now the heart of your argument, really, before us. Yes. I mean, I would say that's the primary argument. I would still maintain that this was also a non-reasonable application. But that's the secondary argument, certainly, on appeal. I'll give you one more minute so you can say what you intended to say before we questioned you. Thank you. Mr. Trump had an incompetent attorney in this case. Wait a minute. If we find the first argument waived, what's your best argument for why you should win anyway? So I think when you look at the status referred to the other evidence in this case, and I think when you take a closer look at that, facts that are in the record, it shows that it was weak. These are cross-racial, stranger IDs by three convicted felons who lied to the police about who was present during the shooting. They had a limited opportunity to view. They were stressed. They were focusing on the weapon. They gave inconsistent accounts as to the description of the suspects, the events leading up to the shooting. They spoke to each other before they went to the police station. They had statements and picked Mr. Chauman, his co-defendant, out of the lineup. But you are not arguing that counsel was deficient because he didn't cross-examine these witnesses sufficiently to bring out racial bias, inconsistency, or the like. That's not your argument. Not at all. I'm saying that that evidence has to be looked at. That's a fact in the case, that these things are facts. And I think the most telling fact in this case is that after Mr. Chauman supposedly confessed and supposedly was picked out by three reliable eyewitnesses who said he was involved in a shooting, he was released by the province police, and he was not charged for three weeks. And I think that is significant, significant evidence. Was that argued to the jury? No, it did not come out that he... I mean, certainly the timetable came out about when he was arrested and the date of the crime.  Thank you.